**UNITED STATES COURT OF APPEALS**
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

| | |
|---|---|
| RENEWABLE FUELS ASSOCIATION,<br>AMERICAN COALITION FOR ETHANOL,<br>BIOTECHNOLOGY INNOVATION ORGANIZATION,<br>GROWTH ENERGY,<br>NATIONAL BIODIESEL BOARD,<br>NATIONAL CORN GROWERS ASSOCIATION, and<br>NATIONAL FARMERS UNION,<br><br>Petitioners,<br><br>v.<br><br>UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,<br><br>Respondent. | Case No.: 18-1154 |

**PETITION FOR REVIEW**

Pursuant to Section 307(b)(1) of the Clean Air Act, 42 U.S.C. § 7607(b)(1), and Rule 15(a) of the Federal Rules of Appellate Procedure; the Renewable Fuels Association, American Coalition for Ethanol, Biotechnology Innovation Organization, Growth Energy, National Biodiesel Board, National Corn Growers Association, and National Farmers Union (collectively, "Petitioners" or "Coalition") hereby petition the United States Court of Appeals for the District of

Columbia Circuit for review of the following final agency actions issued by the Environmental Protection Agency ("EPA"):

1. Annual Standard Equations at 40 C.F.R. § 80.1405(c) (hereinafter referred to as the "Annual Standard Equations"), which were published in *Regulation of Fuels and Fuel Additives, Changes to Renewable Fuel Standard Program, 75 Fed. Reg. 14,670* (Mar. 26, 2010) ("RFS2 Final Rule") (attached as Exhibit 1);

2. *Periodic Reviews for the Renewable Fuel Standard Program, 82 Fed. Reg. 58,364* (Dec. 12, 2017) (attached as Exhibit 2).

EPA is obligated under 42 U.S.C. § 7545(o)(3)(B) to each year "determine and publish in the Federal Register, with respect to the following calendar year, the renewable fuel obligation that ensures that the requirements of [42 U.S.C. § 7545(o)(2)] are met." Since the RFS2 Final Rule, EPA has calculated the value of the annual percentage standards of renewable fuel required to be blended into transportation fuel in order to ensure that the annual renewable fuel volume requirements set forth in 42 U.S.C. § 7545(o)(2)(B) are met using the equation set forth at 40 CFR § 80.1405(c). Two variables in the denominator of the Annual Standard Equations—$GE_i$ and $DE_i$—account for the volumes of gasoline and diesel "projected to be produced by exempt small refineries and small refiners, in year $_i$, in gallons in any year they are exempt per §§ 80.1441 and 80.1442, respectively."

The Annual Standard Equations do not include variables, however, to account for small refinery exemptions that are granted *retroactively* after EPA had finalized a given year's renewable volume obligation ("RVO"). Notwithstanding

this limitation inherent in EPA's formula, recent news reports—which have been confirmed in relevant part by Administrator Pruitt—have revealed that EPA has suddenly reversed its longstanding practice of granting retrospective small refinery waiver exemptions sparingly. Instead, EPA has granted unprecedented numbers of such retroactive waiver extensions in 2017 and 2018, thus ignoring a key limitation in EPA's Annual Standard Equations and ensuring that the annual volume requirements will be missed by a significant amount. EPA's choice to continue to apply the equations set forth in 40 C.F.R. § 80.1405(c) is arbitrary and capricious because, in light of the recent dramatic increase in retroactive small refinery exemptions, the Annual Standard Equations no longer fulfil EPA's obligation to ensure that the statutory annual renewable fuel volume requirements are met.

This Court may hear a petition for review of a final agency action after the initial period for review has closed, when the petition is based upon "new information" that may "dictate a revision or modification of any promulgated standard or regulation established under the act." *Oljato Chapter of the Navajo Tribe v. Train*, 515 F.2d 654, 660 (D.C. Cir. 1975) (quoting S. Rep. No. 91-1196, at 41-42 (1970)); *see also* 42 U.S.C. § 7607(b)(1) (providing for judicial review after the initial 60-day review period expires if the "petition is based solely on grounds arising after such sixtieth day," and is "filed within sixty days after such grounds arise"). Thus, although the 2010 final rule was promulgated eight years

ago, this Court has jurisdiction to hear the Petition because such new grounds for review exist here, and because this Petition is being filed "within sixty days after such grounds ar[o]se." 42 U.S.C. § 7607(b)(1).

Specifically, there are new grounds for review because it has recently been revealed that one of the key assumptions that once supported the Annual Standard Equations is no longer valid. At the time of the RFS2 Final Rule in 2010, there was no need for the Annual Standard Equations to account for retroactive exemptions prior to 2010 because Congress had mandated that *all* small refineries were exempt from the standard until 2011, 75 Fed. Reg. 14,716, and that after that, EPA stated, it did not anticipate granting additional small refinery hardship exemptions prospectively except in rare circumstances, 75 Fed. Reg. 14,736 (Department of Energy "thus determined that small refineries would not be subject to disproportionate economic hardship under the proposed RFS2 program, and that the exemption should not, on the basis of the study, be extended for small refineries (including those small refiners who own refineries meeting the small refinery definition) beyond December 31, 2010."); 75 Fed. Reg. 76,790, 76,804 (Dec. 9, 2010) ("Beginning in 2011, gasoline and diesel volumes produced by small refineries and small refiners will generally no longer be exempt, and thus there is no adjustment to the gasoline and diesel volumes in today's final rule to account for such an exemption.").

Until recently, EPA's assumption was not challenged by the available information. Although EPA extended the small refinery exemptions for 2011 and 2012 to 13 of 59 small refineries based on a 2011 study by the Department of Energy, *see Sinclair Wyo. Refining Co. v. EPA*, 874 F.3d 1159, 1163 (10th Cir. 2017), those extensions should, per the Clean Air Act, have been determined before the RVOs for 2011 and 2012 were finalized and thus there would have been no reason to expect those exemptions to be retroactive. *See* 42 U.S.C. § 7545(o)(9)(A)(ii). After 2012, and until recently, EPA granted exemptions on a case-by-case basis only sparingly. Based on limited available data, EPA granted on average seven or eight hardship exemptions per year for the first four years in which it made case-by-case exemption determinations based on extension petitions filed by the refineries. *See* Exhibit 2 at 11 n.33; Jarrett Renshaw, *U.S. Small Refiners Make Surge of Biofuel Waiver Requests – Sources*, Reuters, Jan. 25, 2018, Appendix G to Exhibit 3. More recently, in December 2015, EPA acknowledged granting three exemptions for 2014 and none for 2015. *See* 80 Fed. Reg. 77,420, 77,511 (Dec. 14, 2015); *see also* 78 Fed. Reg. 49,794, 49,825 (Aug. 15, 2013) ("EPA has granted one exemption for 2013").

As recently as the Proposed Rule for the 2018 RVOs, EPA continued to assert that most small refineries would not qualify for an economic hardship exemption because, as EPA admitted, "Currently available information shows that

the impact on small entities from implementation of this rule would not be significant." 82 Fed. Reg. 34,243 (July 21, 2017). Even using conservative estimates, "the costs to small entities of the RFS standards are far less than 1 percent of the value of their sales." *Id*. Moreover, EPA concluded that "obligated parties, including small entities, are generally able to recover the cost of acquiring the RINs necessary for compliance with the RFS standards through higher sales prices of the petroleum products they sell than would be expected in the absence of the RFS program." *Id*.

Despite all of this, EPA has drastically changed course. The Coalition has learned, through credible news reports that first broke in April of this year, that EPA had granted a large number of retroactive small refinery hardship exemptions for calendar years for which RVOs were already finalized. *See* Jarrett Renshaw & Chris Prentice, *Chevron, Exxon Seek 'Small Refinery' Waivers from U.S. Biofuels Law*, Reuters, Apr. 12, 2018, Appendix C to Exhibit 3. Based on such reports, the number of exemptions—and of retroactive exemptions specifically—granted for 2017 is about three times higher than the historical average. *See* Jarrett Renshaw & Chris Prentice, *Large U.S. Refiner Marathon Seeks Biofuel Hardship Waiver-Sources*, Reuters, May 23, 2018, attached as Appendix E to Exhibit 3. EPA Administrator Scott Pruitt confirmed in testimony to the House Energy and Commerce Committee on April 26, 2018, that EPA approved approximately 25

small refinery waivers in 2017 and an even higher number for 2018. *Transcript of U.S. House of Representatives Energy and Commerce Committee, Subcommittee on Environment Hearing on Fiscal Year 2019 Environmental Protection Agency Budget*, attached as Appendix H to Exhibit 3, at ln. 1231-32 (April 26, 2018).

Prior to the April 2018 news reports, there was no public information to suggest that EPA's small refinery waiver policy had changed so drastically. EPA did not even provide public notice that it had received or had acted upon *any* recent requests for an extension of a small refinery exemption.

To date, EPA has refused to disclose information requested by Petitioners Renewable Fuels Association, Growth Energy, and National Biodiesel Board in response to their separate Freedom of Information Act ("FOIA") requests to the agency. *See* Appendix F to Exhibit 3. The Coalition is also aware of an April 12, 2018 letter from a bipartisan group of United States Senators to EPA requesting additional information from EPA regarding small refinery exemptions. *See* Letter from Charles E. Grassley, United States Senator, to Scott Pruitt, EPA Administrator (Apr. 12, 2018), Appendix Q to Exhibit 3. To Petitioners' knowledge, EPA has yet to release this requested information as of the date of this Petition.

Consequently, while the Coalition does not yet have *actual* knowledge of EPA's actions here that constitute new grounds for review, it believes there is

sufficient credible evidence – particularly Administrator Pruitt's April 26 testimony – to establish that such grounds exist. Out of an abundance of caution, therefore, the Coalition is filing this Petition within 60 days of the first news article (April 12, 2018) that suggested EPA had granted an unusually high number of retroactive exemptions to otherwise profitable refineries, to ensure that it is timely filed with this Court. *See* Appendix C to Exhibit 3.

As required by this Court's precedent, *Oljato*, 515 F.2d at 666, the Coalition has filed a petition for reconsideration with EPA presenting the Administrator with the reasons why a rule change is required. *See* Exhibit 3. That petition is currently pending before the Agency. In light of that fact, the Coalition plans to file a Motion to stay this action until the EPA acts upon the Coalition's petition imminently following docketing of this Petition.

The Corporate Disclosure Statement required by Federal Rule of Appellate Procedure 26.1 and D.C. Circuit Rule 26.1 is attached as Exhibit 4. The Certificate of Service is attached as Exhibit 5.

Date: June 4, 2018

Respectfully submitted,

/s/ Matthew W. Morrison
Matthew W. Morrison
Cynthia Cook Robertson
Bryan M. Stockton
PILLSBURY WINTHROP SHAW PITTMAN LLP
1200 Seventeenth Street, NW

Washington, DC 20036
T: (202) 663-8036
F: (202) 663-8007
matthew.morrison@pillsburylaw.com
cynthia.robertson@pillsburylaw.com
bryan.stockton@pillsburylaw.com

*Counsel for Petitioners Renewable Fuels Association, American Coalition for Ethanol, Biotechnology Innovation Organization, National Corn Growers Association, and National Farmers Union*

Seth P. Waxman
David M. Lehn
Saurabh Sanghvi
Claire H. Chung
WILMER CUTLER PICKERING
HALE AND DORR LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
(202) 663-6000
seth.waxman@wilmerhale.com
david.lehn@wilmerhale.com
saurabh.sanghvi@wilmerhale.com
claire.chung@wilmerhale.com

*Counsel for Petitioner Growth Energy*

Bryan M. Killian
Douglas A. Hastings
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Ave., NW
Washington, DC 20004
(202) 373-6000
bryan.killian@morganlewis.com
douglas.hastings@morganlewis.com

*Counsel for Petitioner National Biodiesel Board*

**UNITED STATES COURT OF APPEALS**
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

| | |
|---|---|
| RENEWABLE FUELS ASSOCIATION,<br>AMERICAN COALITION FOR ETHANOL,<br>BIOTECHNOLOGY INNOVATION ORGANIZATION,<br>GROWTH ENERGY,<br>NATIONAL BIODIESEL BOARD,<br>NATIONAL CORN GROWERS ASSOCIATION, and<br>NATIONAL FARMERS UNION,<br><br>Petitioners,<br><br>v.<br><br>UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,<br><br>Respondent. | Case No.:___________ |

## CERTIFICATE OF CORPORATE DISCLOSURE

Pursuant to Federal Rule of Appellate Procedure 26.1 and D.C. Circuit Rule 26.1, Petitioners provide the following corporate disclosure statement:

The Renewable Fuels Association ("RFA") is a non-profit trade association within the meaning of D.C. Circuit Rule 26.1(b). Its members are ethanol producers and supporters of the ethanol industry. It operates for the purpose of promoting the general commercial, legislative, and other common interest of its

members. The Renewable Fuels Association does not have a parent company, and no publicly held company has a 10% or greater ownership interest in it.

The American Coalition for Ethanol ("ACE") is a non-profit trade association within the meaning of D.C. Circuit Rule 26.1(b). Its members include ethanol and biofuel facilities, agricultural producers, ethanol industry investors, and supporters of the ethanol industry. It operates for the purpose of promoting the general commercial, legislative, and other common interests of its members. It does not have a parent company, and no publicly held company has a 10% or greater ownership interest in it.

The Biotechnology Innovation Organization ("BIO") is a non-profit trade association within the meaning of D.C. Circuit Rule 26.1(b). Its members are biotechnology companies, academic institutions, state biotechnology centers, and related organizations involved in the research and development of biotechnology products, including conventional and advanced biofuels. It operates for the purpose of promoting the general commercial, legislative, and other common interests of its members. It does not have a parent company, and no publicly held company has a 10% or greater ownership interest in it.

Growth Energy is a non-profit trade association within the meaning of D.C. Circuit Rule 26.1(b). Its members are ethanol producers and supporters of the ethanol industry. It operates for the purpose of promoting the general commercial,

legislative, and other common interests of its members. It does not have a parent company, and no publicly held company has a 10% or greater ownership interest in it.

The National Biodiesel Board ("NBB") is a non-profit trade association within the meaning of D.C. Circuit Rule 26.1(b). It is the national trade association for the biodiesel and renewable diesel industry, and its mission is to advance the interests of its members by creating sustainable biodiesel and renewable diesel industry growth. NBB has no parent companies, and no publicly-held company has a 10% or greater ownership interest. It has not issued shares or debt securities to the public.

The National Corn Growers Association ('NCGA") is a non-profit trade association within the meaning of D.C. Circuit Rule 26.1(b). Its members are corn farmers and supporters of the agriculture and ethanol industries. It operates for the purpose of promoting the general commercial, legislative, and other common interests of its members. It does not have a parent company, and no publicly held company has a 10% or greater ownership interest in it.

The Farmers Educational & Cooperative Union of America (doing business as the National Farmers Union) ("NFU") is a non-profit trade association within the meaning of Circuit Rule 26.1(b). Its members include farmers who are producers of biofuel feedstocks and consumers of large quantities of fuel. It

operates for the purpose of promoting the general commercial, legislative, and other common interests of its members. It does not have a parent company, and no publicly held company has a 10% or greater ownership interest in it.

Date: June 4, 2018

Respectfully submitted,

/s/ Matthew W. Morrison
Matthew W. Morrison
Cynthia Cook Robertson
Bryan M. Stockton
PILLSBURY WINTHROP SHAW PITTMAN LLP
1200 Seventeenth Street, NW
Washington, DC 20036
T: (202) 663-8036
F: (202) 663-8007
matthew.morrison@pillsburylaw.com
cynthia.robertson@pillsburylaw.com
bryan.stockton@pillsburylaw.com

*Counsel for Petitioners Renewable Fuels Association, American Coalition for Ethanol, Biotechnology Innovation Organization, National Corn Growers Association, and National Farmers Union*

Seth P. Waxman
David M. Lehn
Saurabh Sanghvi
Claire H. Chung
WILMER CUTLER PICKERING
HALE AND DORR LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
(202) 663-6000
seth.waxman@wilmerhale.com
david.lehn@wilmerhale.com
saurabh.sanghvi@wilmerhale.com
claire.chung@wilmerhale.com

*Counsel for Petitioner Growth Energy*

Bryan M. Killian
Douglas A. Hastings
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Ave., NW
Washington, D.C. 20004
(202) 373-6000
bryan.killian@morganlewis.com
douglas.hastings@morganlewis.com

*Counsel for Petitioner National Biodiesel Board*

## CERTIFICATE OF SERVICE

Pursuant to Federal Rules of Appellate Procedure 15(c) and 25, D.C. Circuit Rules 15(a) and 25, and 40 C.F.R. § 23.12(a), I hereby certify that on June 4, 2018, I will cause copies of the foregoing Petition for Review and Certificate of Corporate Disclosure to be served by certified mail, return receipt requested upon the following:

The Hon. Scott Pruitt
Administrator
U.S. Environmental Protection Agency
Ariel Rios Building
1200 Pennsylvania Ave., NW
Washington, DC 20460

Correspondence Control Unit
Office of General Counsel (2311)
U.S. Environmental Protection Agency
1200 Pennsylvania Ave., NW.
Washington, DC 20460

The Hon. Jeff Sessions
Attorney General of the United States
U.S. Department of Justice
950 Pennsylvania Ave., NW
Washington, DC 20530

Jeffrey H. Wood
Acting Assistant Attorney General
U.S. Department of Justice
Law and Policy Section
Environment and Natural Resources
Division
950 Pennsylvania Ave., N.W.
Washington, D.C. 20530-0001

/s/ Matthew W. Morrison
Matthew W. Morrison
PILLSBURY WINTHROP SHAW PITTMAN LLP
1200 Seventeenth Street, NW
Washington, DC 20036
T: (202) 663-8036
F: (202) 663-8007
matthew.morrison@pillsburylaw.com