**UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT**

| | |
|---|---|
| RENEWABLE FUELS ASSOCIATION,<br>AMERICAN COALITION FOR ETHANOL,<br>BIOTECHNOLOGY INNOVATION ORGANIZATION,<br>GROWTH ENERGY,<br>NATIONAL BIODIESEL BOARD,<br>NATIONAL CORN GROWERS ASSOCIATION, and<br>NATIONAL FARMERS UNION,<br><br>Petitioners,<br><br>v.<br><br>UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,<br><br>Respondent. | Case No. 18-1154 |

**PETITIONERS' MOTION TO LIFT STAY OF PROCEEDINGS**

Petitioners the Renewable Fuels Association, the American Coalition for Ethanol, the Biotechnology Innovation Organization, Growth Energy, the National Biodiesel Board, the National Corn Growers Association, and the National Farmers Union (collectively, the "Coalition") respectfully move this Court to lift the stay it entered on June 22, 2018, in this proceeding. Respondent U.S.

Environmental Protection Agency ("EPA" or "the Agency") expects that it will oppose the Motion.

On June 4, 2018, the Coalition filed a Petition for Review (the "Petition") of 40 C.F.R. § 80.1405(c) ("Annual Standard Equations"), published in *Regulation of Fuels and Fuel Additives: Changes to Renewable Fuel Standard Program*, 75 Fed. Reg. 14,670 (Mar. 26, 2010) ("RFS2 Final Rule") (attached to Petition as Exhibit 1).[1] The Annual Standard Equations set forth the method by which EPA calculates the annual percentage standards under the Clean Air Act's Renewable Fuel Standard ("RFS"). At the same time, the Coalition asked the Court to hold the case in abeyance to allow EPA to reconsider its Annual Standard Equations in the first instance through an administrative petition for reconsideration filed by the Coalition on the same day. The Court granted that motion.

Thirteen months have passed since the filing of the petition, without even a proposed substantive response from EPA. Meanwhile, the Agency has shown through various actions that it is *not* genuinely considering the Coalition's administrative petition and has in effect denied it. First, EPA has continued to

---

[1] The Coalition also sought judicial review of *Periodic Reviews for the Renewable Fuel Standard Program*, 82 Fed. Reg. 58,364 (Dec. 12, 2017) (attached to Petition for Review as Exhibit 2). This Court has since determined that this document is not a reviewable final agency action. *Valero Energy Corp. v. EPA*, No. 18-1028, slip op. at 10-11 (D.C. Cir. June 25, 2019).

grant retroactive small refinery exemptions. *See* 83 Fed. Reg. 63,704, 63,743 n.179 (Dec. 11, 2018) (noting ongoing evaluation of exemption petitions for compliance years for which renewable fuel percentage standards had already been finalized and for compliance years that had already ended). Second, EPA has proposed and finalized annual RFS rules that fail to adjust annual standards for its retroactive exemption extensions and note therein that the Agency would not change the Annual Standard Equations. It did so despite the Coalition's administrative petition and the urging of the Administration's own Office of Management and Budget ("OMB") to provide a mechanism to make up exempted volumes. And third, EPA has argued in various lawsuits that the statute does not allow it to adjust the percentage standards, including in ways the Coalition argued for in its reconsideration petition.

Accordingly, and as explained more fully herein, EPA has constructively denied the Coalition's petition or (alternatively) refused to convene a mandatory reconsideration proceeding. The Coalition therefore requests that the Court lift the stay and set an appropriate briefing schedule.

## STATUTORY BACKGROUND

In enacting the RFS, Congress aimed to "move the United States toward greater energy independence and security" and "increase the production of clean renewable fuels." Energy Independence and Security Act of 2007, Pub. L.

No. 110-140, 121 Stat. 1492. Under the RFS, EPA must promulgate regulations to "ensure that transportation fuel sold…in the United States…contains at least the applicable volume of renewable fuel." 42 U.S.C. § 7545(o)(2)(A)(i). EPA is allowed to "reduc[e]" the minimum applicable volumes only "in limited circumstances" not applicable here. *Id.* § 7545(o)(7)(A), (D); *Nat'l Petrochemical & Refiners Ass'n v. EPA*, 630 F.3d 145, 149 (D.C. Cir. 2010). Congress also required EPA to determine and publish by November 30 of each year, "with respect to the following calendar year, the renewable fuel obligation that ensures that the [applicable volumes] are met." 42 U.S.C. § 7545(o)(3)(B)(i).

To enable each "obligated party" to determine how much renewable fuel it is responsible for introducing into the nation's renewable fuel supply in a given year, EPA converts the applicable volume requirements into percentage standards using the Annual Standard Equations set forth in the RFS2 Final Rule and codified at 40 C.F.R. § 80.1405(c). *See* 40 C.F.R. § 80.1407.[2] EPA must publish the percentage standards for a given compliance year by the preceding November 30. 42 U.S.C. § 7545(o)(3)(B)(i); 40 C.F.R. § 80.1405(b).

[2] "The percentage standards represent the ratio of the national applicable volume of renewable fuel volume to the national projected non-renewable gasoline and diesel volume less any gasoline and diesel attributable to small refineries granted an exemption prior to the date that the standards are set." 83 Fed. Reg. 32,024, 32,027 (July 10, 2018).

To comply with their RFS obligations, "obligated parties"—gasoline and diesel fuel refiners and importers—must either blend quantities of renewable fuel that correspond with their renewable volume obligation ("RVO") into their gasoline and diesel or purchase sufficient credits—in the form of renewable identification numbers or "RINs." *See* 42 U.S.C. § 7545(o)(2)(A)(i), (o)(2)(B), (o)(3)(B); 40 C.F.R. § 80.1427. "If each obligated party meets the required percentage standards, then the Nation's overall supply of…renewable fuel will meet the total volume requirements set by EPA." *Ams. for Clean Energy v. EPA*, 864 F.3d 691, 699 (D.C. Cir. 2017).

EPA's Annual Percentage Equations, however, ensure that obligated parties will *not* meet the total volume requirements because of EPA's current (and relatively recent) practice of granting almost every request for an extension of small refinery exemptions from compliance obligations in years that have already passed. Congress provided a "temporary exemption" to all small refineries[3] through 2010. 42 U.S.C. § 7545(o)(9)(A)(i). After that, EPA could grant, on a case-by-case basis, only "extensions" of the exemption based on certain narrowly tailored statutory criteria. *Id.* § 7545(o)(9)(A)(ii), (B). EPA could "extend" the temporary exemption "for a period of not less than 2

[3] A "small refinery" is one "for which the average aggregate daily crude oil throughput for a calendar year…does not exceed 75,000 barrels." 42 U.S.C. § 7545(o)(1)(K).

additional years" for any small refinery that a congressionally directed Department of Energy ("DOE") study concluded would experience "disproportionate economic hardship" resulting from RFS compliance. *See id.* § 7545(o)(9)(A)(ii). Only 24 out of 59 eligible small refineries[4] received an extension for 2011-2012.[5] After the initial extension of the temporary exemption expired, a small refinery may petition EPA "at any time" for "an extension of the exemption under subparagraph (A)"—which provides for both the statutory temporary exemption and the initial DOE-based extension—"for the reason of disproportionate economic hardship." *Id*. § 7545(o)(9)(B)(i); 40 C.F.R. § 80.1441(e)(2).

EPA's Annual Standard Equations currently account only for exemption extensions for the upcoming compliance year that have already been granted by the time the percentage standards are set (November 30 preceding the compliance year). Those equations subtract the exempt volumes from the total required transportation fuel volume used to set the percentage standards and thereby increase the percentage standards for the remaining non-exempt

---

[4] DOE, *Small Refinery Exemption Study* (March 2011), Appendix E at E-1.
[5] EPA, *RFS Small Refinery Exemptions* (June 24, 2019), https://www.epa.gov/fuels-registration-reporting-and-compliance-help/rfs-small-refinery-exemptions.

obligated parties.[6] But the Annual Standard Equations do not account for exemption extensions granted retroactively—that is, after the percentage standards have been finalized for the year covered by the extension—even though almost all of the small refinery exemption extensions granted by EPA over the last two years have been retroactive.

At the time the Annual Standard Equations were promulgated in early 2010, the Equations' failure to account for retroactive exemption extensions was expected to be immaterial, as EPA thought that few, if any, small refineries would be eligible for continued extensions of exemptions. *See* 75 Fed. Reg. at 76,804; *see also* 75 Fed. Reg. 42,238, 42,242 n.4 (July 20, 2010) ("[T]here is no reason to believe that any small refinery would be disproportionately harmed by inclusion in the proposed RFS2 program for 2011 and beyond.").[7] And as it turned out, its effect was negligible through 2015, because EPA still denied about half of the petitions received for compliance years 2013-2015.[8]

---

[6] Two variables in the denominator of the Annual Standard Equations—GEi and DEi—account for the volumes of gasoline and diesel "projected to be produced by exempt small refineries and small refiners, in year i, in gallons in any year they are exempt per §§ 80.1441 and 80.1442." 40 C.F.R. § 80.1405(c). EPA has accounted for the small refinery hardship exemptions granted before the final RVOs each year by assigning values to GEi and DEi, which in turn "result in a proportionally higher percentage standard for remaining obligated parties." 75 Fed. Reg. 76,790, 76,805 (Dec. 9, 2010).

[7] Although DOE did revisit and revise its study in 2011, the Annual Standard Equations remained unchanged.

[8] EPA granted a total of 23 exemption extensions out of 43 petitions for years

EPA changed its approach for compliance years 2016 and 2017. Between compliance years 2015 and 2017, EPA increased its approval rate of petitions from 50% to almost 100%, and the overall number of exempt small refineries increased by over 300%. *See* EPA, *RFS Small Refinery Exemptions*, *supra* note 5. Indeed, EPA has granted unprecedented numbers of petitions for 2016 and 2017—19 of 20 petitions received for 2016, 35 of 37[9] petitions received for 2017—and 38 petitions are pending for 2018. Exempted RVOs have skyrocketed by 620% between 2015 and 2017, the most recent year for which such data is available. *Id*. Retroactive exemptions collectively reduced the annual RVOs for 2017, the most recent year for which data is available, by approximately 9.5% (nearly 2 billion gallons) below the level set in the final rule. *Compare* EPA, *RFS Small Refinery Exemptions*, *supra* note 5 (showing estimated RVO exemptions of 1.82 billion RINs for 2017), *with* 81 Fed. Reg. 89,746, 89,747 (Dec. 12, 2016) (showing final renewable fuel volume requirement of 19.28 billion gallons for 2017). Because EPA now effectively grants all petitions retroactively and (incorrectly) interprets "extend" not to require that the applicant refinery have been exempt in all preceding years,

---

2013-2015. EPA, *RFS Small Refinery Exemptions*, *supra* note 5. In fact, the cumulative small refinery RVOs exempted for compliance years 2013-2015 were 100 million gallons fewer than what EPA exempted for compliance year 2016 alone. *Id*. EPA did not release these aggregate numbers until after this litigation had commenced.

[9] One remains pending and one was declared ineligible. EPA, *RFS Small Refinery Exemptions*, *supra* note 5.

the RVOs exempted for 2018 could be as large as or greater than in prior years. *See* Final Resp. Br. for the Resp'ts 47-51, *Advanced Biofuels Ass'n v. EPA*, No. 18-1115 (D.C. Cir. July 8, 2019), ECF No. 1796068; EPA, *RFS Small Refinery Exemptions*, *supra* note 5. As a result, EPA's Annual Standard Equations do not ensure that the total annual volume obligation is met. Quite the contrary—they ensure that the total annual volume obligation is *not* met, by a significant amount.

## PROCEDURAL HISTORY

On June 4, 2018, the Coalition filed with this Court its Petition for Review of the RFS2 Final Rule. Citing news reports and testimony from then-Administrator Pruitt in April 2018, the Petition asserted that an unprecedented number of small refinery exemption extensions granted by EPA provided new grounds for judicial review of the RFS2 Final Rule. Pet. for Review 6, ECF No. 1735386.

Consistent with the precedent established by this Court in *Oljato Chapter of the Navajo Tribe v. Train*, 515 F.2d 654, 666 (D.C. Cir. 1975), the Coalition concurrently submitted an administrative petition for reconsideration with EPA requesting that the agency modify 40 C.F.R. § 80.1405(c) to account for the unprecedented and unanticipated increase in retroactive small refinery exemption extensions. *See* Pet. Ex. 3.

Because the Coalition wished to give EPA an opportunity to resolve this dispute administratively, the Coalition simultaneously requested that this case be held in abeyance pending further administrative proceedings. ECF No. 1735389. On June 22, 2018, the Court ordered the case held in abeyance pending agency proceedings, ordered EPA to file status reports every 90 days, and provided that any party may file a motion in the interim should the party deem it appropriate to seek relief. ECF No. 1737438.

In each of its four status reports, EPA has stated merely that it has "received and is considering the administrative petition" and that the case "should continue to be held in abeyance" because "Agency proceedings are ongoing." ECF Nos. 1751864, 1764953, 1778348, and 1793181. However, in the thirteen months that have passed since the filing of the Petition, EPA has, through various actions argued more fully herein, shown that in fact it is *not* genuinely considering the Coalition's administrative petition.

## ARGUMENT

### I. EPA Has Constructively Denied the Petition for Reconsideration

EPA has constructively denied the Coalition's petition for reconsideration because intervening agency activity has made it clear that further engagement in the administrative proceeding would be "clearly useless." *UDC Chairs Chapter, Am. Ass'n of Univ. Professors v. Bd. of Trustees*, 56 F.3d 1469, 1476 (D.C. Cir.

1995) (citation and internal quotation marks omitted). The Coalition need not exhaust administrative remedies because it would mean the pursuit of a "futile proceeding." *Utah Power & Light Co. v. I.C.C.*, 747 F.2d 721, 729 (D.C. Cir. 1984). "Two strong factors" reinforcing the futility of further administrative review "are that a form of [the] claim was raised before the agency and that the agency has demonstrated its disinclination to respond favorably to [the] claim." *Id.* (internal quotations omitted). Both of those factors are present here.

First, the Coalition's claim—that EPA must account for retroactive exemption extensions in setting the percentage standards where it grants large numbers of (unlawful) extensions—has been before EPA since at least mid-April 2018. This claim has been presented to EPA by congressional inquiry and by administrative proceedings and associated litigation.

After media reports that EPA secretly granted large numbers of exemption extensions, for example, a bipartisan group of thirteen senators sent a letter to EPA Administrator Scott Pruitt on April 13, 2018, requesting a "detailed report to Congress" including "whether the volumes were redistributed to other obligated parties" and if not, why "the volumes were not redistributed" and "why…EPA decided to undercut the RVOs against the President's commitment."[10] At a Congressional hearing on April 26, 2018, Rep.

[10] Letter from Sen. Charles Grassley to Adm'r Scott Pruitt (Apr. 12, 2018),

Loebsack asked then-Administrator Pruitt, "And how do you plan to reassign then the gallons you waive for going forward for the 2019 RVO?" *See* Pet. Ex. 3, App'x. O, ln. 4353-55. On June 4, 2018, the Coalition filed its administrative petition for reconsideration. *See* Pet. Ex. 3.

Additionally, the Coalition as well as other private parties have asserted the claim to EPA through comments on RFS administrative proceedings.[11] They have also then pursued their claims through ensuing lawsuits.[12] EPA has had ample time to consider and address the Coalition's concerns.

Second, throughout the intervening period, EPA has consistently demonstrated that it will not modify its regulations to account for retroactive exemptions and to ensure that the required volumes are met. *See Handley v.*

---

https://www.grassley.senate.gov/sites/default/files/Pruitt%20Small%20Refinery%20Letter%204.12.18.pdf.

[11] *See, e.g.*, Statement of Chris Bliley, Vice President of Regulatory Affairs, Growth Energy, EPA Hearing on the 2019 RFS Renewable Volume Obligations (June 24, 2018), Docket No. EPA-HQ-OAR-2018-0167-1292; Comments of Renewable Fuels Ass'n at 5-7 (Aug. 21, 2018), Docket No. EPA-HQ-OAR-2018-0167-0665; Comments of Growth Energy at 12-15 (Aug. 17, 2018), EPA-HQ-OAR-2018-0167-1292; Comments of the Coalition for Renewable Natural Gas *et al.*, (Aug. 17, 2018), EPA Docket ID No. EPA-HQ-OAR-2018-0167 (seeking reallocation of retroactive exemptions).

[12] *See* Br. of Nat'l Biodiesel Board 5-6, *Am. Fuel & Petrochemical Mfrs. v. EPA*, No. 17-1258 (D.C. Cir. Jan. 4, 2019), ECF No. 1767114; Final Opening Br. of Pet'r. 47, 49-55, *Producers of Renewables United v. EPA*, No. 18-1202 (D.C. Cir. Apr. 1, 2019), ECF 1780383 (arguing that retroactive exemptions call into question required volumes and referencing administrative petition for reconsideration raising that issue filed by petitioner in the case).

*Chapman*, 587 F.3d 273, 282 (5th Cir. 2009) ("[An] agency's path may be readily discerned from its prior interim rules, Program Statements, and consistent litigation position."). EPA's statements in RFS-related rulemakings confirm that EPA has already consistently rejected the merits of the Coalition's petition:

- As part of the inter-agency review for the proposed rule setting percentage standards for 2019, EPA on June 19, 2018, (unbeknownst to the Coalition at the time of its Petition) circulated a draft of the proposed rule that adjusted the percentage standards based on projected small refinery exemptions for compliance year 2019. EPA-HQ-OAR-2018-0167-0103 (June 19 "Revised version of 2019 RVO NPRM"). EPA was responding to previous comments from OMB reviewers that EPA "include an estimate for 2019 small refinery waivers based on the waivers granted over the past two years. Current procedures ensure the RVO isn't met." *Id.* (June 4 "EO 12866 comments"). EPA's draft rule stated: "For 2019, we have calculated the percentage standards adjusting for estimated exempted volumes, using the exempted volume for 2017." *Id.* (June 19 "Revised version of 2019 RVO NPRM"). Consequently, EPA increased the percentage standard from 10.88% in

the initial draft to 11.76%[13] to account for estimated small refinery exemption extensions in 2019. *Id.* (June 19 "Revised version of 2019 RVO NPRM"). Moreover, EPA stated its intention "*to propose changes to our regulations that would allow EPA to precisely account for any small refinery exemptions in establishing the percentage standards for future years,*" *id.* (emphasis added)—exactly the outcome that the Coalition seeks here. EPA ultimately removed this reallocation language, however, and in a June 22, 2018 draft reverted the percentage standard back to 10.88%. *Id.* (June 22 "Revised RVO rule"). That change of position shows unequivocally that EPA already has considered and rejected the substance of the Coalition's position.

- EPA also refused to account for retroactive small refinery exemption extensions in the final RFS rule for 2019. *See Final Rule, Renewable Fuel Standard Program: Standards for 2019 and Biomass-Based Diesel Volume for 2020*, 83 Fed. Reg. at 63,740 ("We are maintaining

[13] This adjustment to the percentage standard of almost one percentage point represents almost a 10% increase over the prior percentage standard, meaning EPA's Annual Standard Equations ensured the required volumes for 2019 fell short by approximately 10%. EPA-HQ-OAR-2018-0167-0103 (June 19 "Revised version of 2019 RVO NPRM"); *see id.* (June 21 "Updated version of 2019 RVP NPRM"). This failure causes continued harm to the Coalition in the form of reduced blending, diminished demand, and lower prices than would have otherwise existed if the annual RVOs were met.

our approach that any exemptions for 2019 that are granted after the final rule is released will not be reflected in the percentage standards….”).

- EPA's proposed rule setting percentage standards for 2020 echoed the position it took in the prior year's rule. *See Proposed Rule, Standards for 2020 and Biomass-Based Diesel Volume for 2021*, 84 Fed. Reg. 36,762, 36,797 (July 29, 2019) ("We are *maintaining* our approach that any exemptions for 2020 that are granted after the final rule is released will not be reflected in the percentage standards ….") (emphasis added). EPA once again closed the door to any discussion of the issue, noting that, "[w]e are *not reopening* this policy or any other aspect of the formula at 40 CFR 80.1405(c). Any comments received on such issues will be deemed beyond the scope of this rulemaking." *Id.* at n.165 (emphasis added). EPA's statements in two RFS rulemakings that it is "maintaining" and "not reopening" its policy of accounting for small refinery exemption extensions amount to a rejection on the merits of the Petition.

In recent RFS-related litigation, EPA has further confirmed that it has functionally denied the Coalition's reconsideration petition because EPA interprets the statute to preclude the Coalition's position:

- In October of 2018, EPA asserted in a case challenging the final rule setting the 2018 percentage standards that the Agency has "consistently rejected" reconsidering percentage standards set by an annual rule to account for retroactive small refinery exemptions. *See* EPA Br. 70, *Am. Fuel & Petrochemicals Mfrs. v. EPA*, No. 17-1258 (D.C. Cir. Oct. 25, 2018), ECF No. 1757157. With reasoning that countenances no possibility of embracing the Coalition's position, EPA argued that it could not make forward-looking predictions or account for volumes in subsequent rules. *Id*. at 75 ("EPA decided in 40 C.F.R. § 80.1405 not to codify speculation and prejudgment of hypothetical future petitions for small refinery exemptions…. NBB's argument that EPA should act 'ex post' by increasing the requirements of future annual rulemakings fares no better…Congress specified that EPA 'shall determine and publish in the Federal Register, *with respect to the following calendar year*, the renewable fuel obligation that ensures that the requirements of paragraph (2) are met' and, in the same sentence of statutory text, provided that EPA must do so by November 30 of each calendar year."). EPA also argued—in contrast to its earlier interpretation in the draft proposed 2019 RVO rule—that "ensuring" the statutory volumes

are met does not necessarily mean they are met with accuracy. *Id*. at 74.

- In a separate filing in March 2019, EPA argued:

> Increasing the standards to reflect later exemptions would not be consistent with the statutory requirement that EPA set the standards "not later than November 30," and would inappropriately render the standards a moving target. Petitioner would require that EPA guess as to which entities will petition for an exemption, then further speculate whether those entities qualify for the exemption.

EPA Br. 39, *Producers of Renewables United for Integrity Truth and Transparency v. EPA*, No. 18-1202 (D.C. Cir. Mar. 4, 2019), ECF No. 1775897.

In sum, these agency actions and statements provide irrefutable evidence that EPA has constructively denied the pending petition and therefore belie EPA's statements to this Court that it is earnestly "considering" the Coalition's reconsideration petition. *See Randolph-Sheppard Vendors of Am. v. Weinberger*, 795 F.2d 90, 105 (D.C. Cir. 1986) ("An adverse decision can also be certain if an agency has articulated a very clear position on the issue which it has demonstrated it would be unwilling to reconsider."). Where, as here, administrative inaction has precisely the same impact on the rights of the parties as denial of relief, "agency inaction may represent effectively final agency action that the agency has not frankly acknowledged," and the agency cannot escape judicial review by hiding its decision in a guise of inaction rather than in the form of an order denying relief.

*Sierra Club v. Thomas*, 828 F.2d 783, 793 (D.C. Cir. 1987). The certainty of EPA's adverse decision on the Coalition's petition for reconsideration makes pursuing an administrative remedy futile, and a further stay in proceedings in this matter no longer appropriate.

## II. EPA Has Constructively Refused to Convene a Reconsideration Proceeding

Even if EPA had not constructively denied the petition for reconsideration, EPA has constructively refused to convene a reconsideration proceeding by failing to act on the petition for thirteen months—a time period in which EPA has proposed percentage standards for compliance years 2019 and 2020.

EPA is required to convene a reconsideration proceeding where, as here, (i) it was "impracticable" for the petitioner to raise an objection within the comment period or "the grounds for such objection" arose after the comment period but "within the time specified for judicial review," and (ii) the objection is "of central relevance to the outcome of the rule." 42 U.S.C. § 7607(d)(7)(B). If these criteria are met, as they are here, then a petitioner "may seek review of such refusal" to convene a reconsideration proceeding, *id.*, and the court "may vacate the refusal and direct the Administrator to convene a reconsideration proceeding," *Utility Air Regulatory Grp. v. EPA*, 744 F.3d 741, 746-47 (D.C. Cir. 2014).

EPA has effectively refused to convene a reconsideration proceeding by not acting on the petition for thirteen months, even though the statutory criteria for mandatory reconsideration were met here and EPA could easily have made that determination within the past thirteen months. First, it was impractical to raise the objection at the time of the RFS2 Final Rule because EPA itself did not anticipate granting more than a few exemption extensions—let alone any retroactively. *See* 75 Fed. Reg. at 14,736; 75 Fed. Reg. at 76,804. As Petitioners explained in their Petition, the grounds for objection arose only after media reports revealed in April 2018 that EPA was granting disproportionately more small refinery exemption extensions than it had in past years, implying that EPA had changed its approach to evaluating claims of disproportionate economic hardship. *See* Pet. 5-6.

Since the filing of the Petition, news reports and other litigation have surfaced indicating that EPA had indeed changed its interpretation of "disproportionate economic hardship"—without any notice and comment—seemingly to make it easier for refineries to obtain an (unlawful) extension of exemption. *See Ergon-West Virginia, Inc. v. EPA*, 896 F.3d 600, 614 (4th Cir. 2018);[14] Jarrett Renshaw, *Trump EPA did not await court ruling to loosen*

---

[14]The Fourth Circuit quoted EPA's decision document as follows:

> In prior decisions, EPA considered that a small refinery could not show disproportionate economic hardship without showing an effect on 'viability,'

*biofuel rules for refiners – documents*, Reuters, May 16, 2019, https://www.reuters.com/article/us-usa-epa-biofuels-exclusive/exclusive-trump-epa-did-not-await-court-ruling-to-loosen-biofuel-rules-for-refiners-documents-idUSKCN1SM13Z (quoting former EPA official who stated that EPA softened the disproportionate economic hardship standard to grant more exemptions and thereby lower RIN prices for all obligated parties, and that EPA later thought its change was "vindicated" by a subsequent Tenth Circuit decision); Email from Liz Bowman forwarding email from David Schnare (July 31, 2017), ED_002308_000757006_00002, *available at* https://www.foiaonline.gov/foiaonline/api/request/downloadFile/ED_002308_20190528_Production_06-19-2019.pdf/a83cdcc3-b944-42da-9ac3-3ff057b311ba (former EPA official stating, "I handed [Pruitt] a five-page brief that I had distributed to senior staff the previous day. [Pruitt] read the top page and then indicated he was not going to deny the [small refinery] exemptions. I then suggested that we could change the exemption criteria in order to carry out his

---

> but we are changing our approach. While a showing of a significant impairment of refinery operations may help establish disproportionate economic hardship, compliance with RFS obligations may impose a disproportionate economic hardship when it is disproportionately difficult for a refinery to comply with its RFS obligations—even if the refinery's operations are not significantly impaired.

*Ergon*, 896 F.3d at 614.

intent. Mr. Pruitt instantly rejected that idea stating, 'We aren't going to do that. It would take 18 months.'… Mr. Pruitt turned to face me and stated, 'Dave, who is going to sue me?'"); Jarrett Renshaw, *Trump mulled plan in 2018 to scale back U.S. biofuel waivers: documents*, Reuters, June 14, 2019, https://www.reuters.com/article/us-usa-biofuels/trump-mulled-plan-in-2018-to-scale-back-u-s-biofuel-waivers-documents-idUSKCN1TF290 (quoting White House memorandum acknowledging that exemption extensions were granted without regard to true disproportionate economic hardship, as the statute requires).

Second, while the grounds for the Coalition's objection arose after the comment period on the RFS regulations, this petition was filed within the 60-day timeframe for judicial review. *See Valero Energy Corp.*, No. 18-1028, slip op. at 11 (noting that petitioner could have sought judicial review of prior analyses under 42 U.S.C. § 7607 within 60 days of EPA identifying them as "periodic reviews" even if the prior analyses had been published more than 60 days previously because EPA's identification constituted new grounds). Moreover, as explained in the Petition and above, the Coalition's objection is of "central relevance" to the outcome of the RFS regulations. EPA's failure to account for retroactive exemptions in the annual percentage standards means EPA is failing to ensure the required volume obligations are met, in

contravention of the statute and congressional intent.

Although the Coalition has met the statutory criteria for a reconsideration proceeding, EPA still refuses to convene such a proceeding despite having had ample time and opportunity to at least grant the petition and thus reopen the 2010 RFS2 rule. Petitions for reconsideration of complex rules have been granted (and even sometimes resolved) in less time. For example, EPA commenced reconsideration of the cellulosic biofuel standard for 2013 three and a half months after the petitions for reconsideration were filed. *See* Letter from Gina McCarthy to Robert Greco (Jan. 23, 2014), *available at* https://www.epa.gov/sites/production/files/2015-08/documents/api-01232014.pdf (January 2014 partial grant of October 2013 petition). EPA also proposed to deny petitions for reconsideration of the RFS point of obligation (which, along with other petitions, EPA construed as petitions for rulemaking) within nine months of receiving the petitions, and then finalized the denial a year later. *See* 82 Fed. Reg. 56,779, 56,779-80 (Nov. 30, 2017); Final Pet'rs.' Br. 4-5, *Alon Refining Krotz Springs, Inc. v. EPA*, No. 16-1051 (D.C. Cir. Aug. 17, 2018), ECF No. 1746232.

EPA's actions are particularly inexcusable given the time-sensitive nature of the annual RVO and percentage standard setting process. By failing to act on the Coalition's request, EPA violated a statutory "right to timely decisionmaking" implicit in the agency's regulatory scheme that will result in the Coalition being

"irreparably harmed through [the] delay." *Mexichem Specialty Resins, Inc. v. EPA*, 787 F.3d 544, 553-55 (D.C. Cir. 2015). Such delays are unreasonable where, as here, Congress has imposed deadlines, "implicitly contemplate[d] timely final action," or determined that "interests other than that of timely decisionmaking will be prejudiced by delay." *Id*. (internal quotations omitted). Although the reasonableness of the agency's delay is a fact-specific inquiry, "the reasonableness of the delay must be judged 'in the context of the statute' which authorizes the agency's action." *In re Int'l Chem. Workers Union*, 958 F.2d 1144, 1149 (D.C. Cir. 1992). The RFS statutory provisions require EPA to set percentage standards annually, and timely review of the petition is necessary so that the percentage standards EPA sets each year ensure the required volumes are met. *See* 42 U.S.C. § 7545(o)(3)(B).

Moreover, allowing EPA years in which to consider whether to convene a reconsideration proceeding invites abuse and serious disruption to RFS implementation. EPA's proposed RFS rule for 2020 suggests that EPA believes it cannot or will never retroactively remedy past decisions that caused volume obligations to be lower than they should be. *See* 84 Fed. Reg. at 36,787 (declining to remedy an adjudicated error that had lowered the 2016 total required volume of renewable fuel by 500 million gallons). While Petitioners vehemently dispute EPA's position, the fact that EPA appears willing to blatantly disregard its

statutory duty to "ensure" the required volumes are met suggests that the longer EPA refuses to convene a reconsideration proceeding, the more likely EPA is to (incorrectly) deem retroactive exemption extensions—and correspondingly the more effectively nullified RVOs—to be unremediable.

EPA has demonstrated a capacity to consider reopening its methodology for accounting for retroactive exemptions on a much more abbreviated schedule. As noted above, the successive interagency review of drafts of the proposed 2019 RVO rulemaking reveal that EPA managed to develop an initial remedy to account for retroactive exemptions between early and mid-June 2018. *Supra* at 13-15. EPA also intended to "propose changes to [its] regulations that would allow EPA to precisely account for any small refinery exemptions in establishing the percentage standards for future years." *Supra* at 14 (quoting June 19 "Revised version of 2019 RVO NPRM"). Given that EPA can find a means to address the substance of the Coalition's claim and propose reopening its regulations in a matter of weeks, EPA has effectively refused to reconvene a reconsideration proceeding.

## CONCLUSION

For the foregoing reasons the Coalition respectfully requests that this Court lift the stay of these proceedings entered on June 22, 2018, and establish an appropriate schedule for further proceedings.

Date: July 30, 2019 Respectfully submitted,

/s/ Matthew W. Morrison
Matthew W. Morrison
Bryan M. Stockton
PILLSBURY WINTHROP SHAW PITTMAN LLP
1200 Seventeenth St., NW
Washington, DC 20036
(202) 663-8036
matthew.morrison@pillsburylaw.com
bryan.stockton@pillsburylaw.com

*Counsel for Petitioners Renewable Fuels Association, American Coalition for Ethanol, Biotechnology Innovation Organization, National Corn Growers Association, and National Farmers Union*

Seth P. Waxman
David M. Lehn
Claire H. Chung
WILMER CUTLER PICKERING HALE AND DORR LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
(202) 663-6000
seth.waxman@wilmerhale.com
david.lehn@wilmerhale.com
claire.chung@wilmerhale.com

*Counsel for Petitioner Growth Energy*

Bryan M. Killian
Douglas A. Hastings
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Ave., NW
Washington, D.C. 20004
(202) 373-6000
bryan.killian@morganlewis.com
douglas.hastings@morganlewis.com

*Counsel for Petitioner National Biodiesel Board*

**CERTIFICATE OF COMPLIANCE WITH FEDERAL RULES OF APPELLATE PROCEDURE 27(d) AND 32(a)**

I hereby certify that this motion complies with the requirements of Fed. R. App. P. 32(a)(5)-(6) because it has been prepared in 14-point Times New Roman, a proportionally spaced font. I further certify that this motion complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A) because it contains 5,199 words, excluding the parts exempted under Rule 32(a)(7)(B)(iii), according to the count of Microsoft Word.

Date: July 30, 2019

Respectfully submitted,

/s/ Matthew W. Morrison
Matthew W. Morrison

## CERTIFICATE OF SERVICE

I certify that on July 30, 2019, I electronically filed the foregoing Motion with the Clerk of Court for the United States Court of Appeals for the District of Columbia Circuit by using the CM/ECF system. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Date: July 30, 2019

Respectfully submitted,

/s/ Matthew W. Morrison
Matthew W. Morrison
PILLSBURY WINTHROP SHAW PITTMAN LLP
1200 Seventeenth St., NW
Washington, DC 20036
T: (202) 663-8036
F: (202) 663-8007
matthew.morrison@pillsburylaw.com

*Counsel for Petitioners Renewable Fuels Association, American Coalition for Ethanol, Biotechnology Innovation Organization, National Corn Growers Association, and National Farmers Union*