NOT YET SCHEDULED FOR ORAL ARGUMENT

**UNITED STATES COURT OF APPEALS**
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

| | |
|---|---|
| RENEWABLE FUELS ASSOCIATION,<br>AMERICAN COALITION FOR ETHANOL,<br>BIOTECHNOLOGY INNOVATION ORGANIZATION,<br>GROWTH ENERGY,<br>NATIONAL BIODIESEL BOARD,<br>NATIONAL CORN GROWERS ASSOCIATION, and<br>NATIONAL FARMERS UNION,<br><br>Petitioners,<br><br>v.<br><br>UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,<br><br>Respondent. | Case No. 18-1154 |

**PETITIONERS' REPLY IN FURTHER SUPPORT OF THEIR MOTION TO LIFT STAY OF PROCEEDINGS**

Petitioners (collectively, the "Coalition") submit this reply to the opposition of the U.S. Environmental Protection Agency ("EPA" or the "Agency") to the Coalition's Motion to Lift the Stay of Proceedings. As explained more fully herein, EPA's objections lack merit and provide no legitimate basis for further maintaining a stay of these proceedings.

Lifting the stay and proceeding with judicial review of 40 C.F.R. § 80.1405(c) ("Annual Standard Equations") is appropriate because EPA has constructively denied the Coalition's administrative petition, thereby defeating the purpose of the stay. EPA's principal arguments against lifting the stay treat this Motion as if it were complaining of EPA's "unreasonable delay" or "failure to act." That is incorrect, and therefore EPA's arguments are irrelevant. The Coalition's Motion is based on its contention that EPA has actually *denied* the Coalition's administrative petition on whose pendency this case was stayed, albeit without expressly saying so. Because the basis for the stay—to allow time for EPA to reconsider the rule and/or revise it—no longer applies in light of EPA's evident rejection of the merits of that administrative petition, there is no point in continuing to stay this case. EPA's attempt to dispel the contention that it has actually denied the administrative petition by minimizing its affirmative statements and actions regarding reallocation of retroactive small refinery exemption extensions is unconvincing.

EPA's other arguments address the merits of the Coalition's Petition for Review. As such, they are out of place in the context of this motion. The Coalition firmly disagrees with EPA's arguments about the merits of its appeal, including with respect to issues such as whether EPA erred in denying the administrative petition, whether the appeal is timely, and whether the Coalition has exhausted

administrative remedies. But this motion is not the proper forum for EPA to raise them or for the Court to address them. EPA may raise them in a proper vehicle after the stay is lifted.

As set forth more fully herein, the Coalition respectfully requests that this Court lift the stay.

## ARGUMENT

### I. The *Oljato* Process Does Not Preclude Review Where, as Here, EPA Has Constructively Denied the Petition.

Citing *Oljato Chapter of the Navajo Tribe v. Train*, 515 F.2d 654 (D.C. Cir. 1975), EPA asserts that this Court should continue to hold the case in abeyance until EPA acts on the pending administrative petition. EPA Opp. 4, ECF No. 1803451. Insofar as this case seeks "direct" judicial review of EPA's rule based on after-arising grounds, 42 U.S.C. §7607(b)(1), it is doubtful that the procedure prescribed in *Oljato* applies here at all in light of this Court's recent decision in *Alon Krotz Springs Refining, Inc. v. EPA*, No. 16-1052, slip op. at 26-29 (D.C. Cir. Aug. 30, 2019). It is also doubtful that the *Oljato* procedure applies to review the denial of the Coalition's administrative petition, since that denial is an "independently reviewable decision[]." *Alon*, slip op. p.28.[1]

[1] Although "styled as" a petition for "reconsideration," the Coalition's administrative petition is also functionally a petition to "revise" or "amend[ a] regulation[] based on new information or changed circumstances," as this Court made clear in *Alon*, slip op. at 14, 19-28.

In any event, *Oljato* does not preclude the Coalition's Motion. This Court's "only holdings [in *Oljato*] were that such petitions [to modify EPA rules] must first be presented to EPA and then are reviewable directly in the courts of appeals." *Alon*, slip op. at 26 (citation omitted). And *Oljato* itself said: "If the [administrative] petition is denied, the petitioner may seek review of the denial in this court pursuant to Section 307." *Oljato*, 515 F.2d at 666. Contrary to EPA's assertions, the Coalition does not attempt to bypass that step; rather, the Coalition did file a petition to modify EPA's rule, and, the Coalition now contends, EPA has in fact denied that petition.[2]

True, *Oljato* also said, "EPA should respond to the petition and, if it denies the petition, set forth its reasons." *Oljato*, 515 F.2d at 666. But that hortatory statement on its face did not foreclose judicial review based on a *constructive* denial, where it was plain that EPA had actually denied the administrative petition but refused to say so.[3] And EPA has cited no cases suggesting that a constructive denial would not be a viable basis for judicial review—under *Oljato* or otherwise. *Cf. Mexichem Specialty Resins, Inc. v. EPA*, 787 F.3d 544, 553 (D.C. 2015) ("Our

---

[2] In an abundance of caution, the Coalition will presently file a separate petition for review of EPA's denial of their administrative petition and request that the new petition for review be consolidated with this case.

[3] Similarly, to the extent that *Oljato* questions the need for litigation where EPA agrees revision is appropriate, EPA Opp. 5, that consideration has no bearing where, as here, the Agency has clearly articulated its view that revision is *not* appropriate.

precedents recognize certain narrow exceptions to the exhaustion requirement, including where the agency completes reconsideration but refuses to acknowledge that it has done so….”). Indeed, this Court has identified constructive agency denials even in the absence of a formal administrative record. *See Friedman v. Fed. Aviation Admin.*, 841 F.3d 537, 545 (D.C. Cir. 2016) (acknowledging "certain irony inherent in requiring an agency to identify reasons for a denial it never thought it issued").

Similarly, despite the absence of a formal denial, "the court can undertake review as though the agency had denied the requested relief and can order an agency to either act or provide a reasoned explanation for its failure to act." *Id.* (quoting *Sierra Club v. Thomas*, 828 F.2d 783, 793 (D.C. Cir. 1987)).[4] EPA cannot credibly argue that it lacked the opportunity to consider the merits of the Coalition's petition. *See* Pet'rs' Mot. 11-17. The relevant facts are now well known and public. Petitioners have presented their arguments to EPA through the administrative petition they filed 14 months ago (as well as in numerous comments on related rulemakings). And since then, EPA has repeatedly articulated its views

---

[4] Contrary to EPA's assertion, EPA Opp. 7 n.3, this Court continues to rely upon *Thomas* well after Congress amended 42 U.S.C. § 7604. *See Mexichem*, 787 F.3d at 553 ("Congress has partly abrogated *Sierra Club v. Thomas*, but its analytical framework for determining whether EPA's delay was unreasonable remains applicable to whether Petitioners may be excused for their failure to exhaust their administrative remedies.").

on the subject in full awareness of petitioners' arguments. Consequently, denying judicial review now would allow EPA to "manipulate its own processes, threatening denial but then refusing to deny or otherwise take definitive action on [the Coalition's] application, in an effort to thwart judicial review." *Friedman*, 841 F.3d at 545.

Any ripeness inquiry must also consider hardship to the Coalition from postponed judicial review. *See Ciba-Geigy Corp. v. EPA*, 801 F.2d 430, 438 (D.C. Cir. 1986). Since the Coalition filed its administrative petition in June 2018, EPA has exempted small refineries from approximately 1.79 billion gallons of renewable fuel: at least 1.43 billion gallons for 2018[5] and about 360 million additional gallons for 2017.[6] And overall, EPA has granted far more.[7] Because of the rule being challenged here, these exemptions reduce the effective national volume requirements one for one—amounting to nine percent of the total volume requirement for 2017 and seven percent of the total volume requirement for 2018.[8]

---

[5] *See* EPA, *Small Refinery Exemptions*, https://www.epa.gov/fuels-registration-reporting-and-compliance-help/rfs-small-refinery-exemptions (Excel table).

[6] As of June 11, 2018, the week following the Petition, EPA had exempted 1.46 billion gallons of renewable fuel for 2017. *See* Carryover RIN Bank Calculations for 2019 NPRM at 7 (June 11, 2018), EPA-HQ-OAR-2018-0167-0043. But as of August 2019, EPA had exempted 1.82 billion gallons for 2017. *Small Refinery Exemptions*, *supra*, note 5.

[7] *See Small Refinery Exemptions*, *supra*, note 5.

[8] *Compare id.* (showing exempted volumes 1.82 billion and 1.43 billion gallons for 2017 and 2018, respectively) *with* EPA, *Renewable Fuel Standards*,

That is highly detrimental to the Renewable Fuel Standard ("RFS") program and to the producers of renewable fuel who are represented by the Coalition.[9] Although "Congress intended the Renewable Fuel Program to be a market forcing policy that would create demand pressure to increase consumption of renewable fuel," *Americans for Clean Energy v. EPA*, 864 F.3d 691, 705 (D.C. Cir. 2017) (internal quotations omitted), EPA's refusal to make up the exemptions has resulted in the RFS program today requiring the market to use the amount of renewable fuel that it used in 2013.[10] Thus, by granting so many exemptions while flouting statutory obligations and not requiring that they be made up, EPA has effectively gutted the RFS program.[11]

Moreover, the path to remedying this state of affairs is likely to be long and slow—so any delay in judicial review will only amplify the harm. EPA recently

---

https://www.epa.gov/renewable-fuel-standard-program/renewable-fuel-annual-standards (showing final total renewable fuel standards of 19.28 billion and 19.29 billion gallons for 2017 and 2018, respectively).

[9] *See* Todd Neeley, *POET Cuts Production after RFS Waivers*, DTN/Progressive Farmer (Aug. 21, 2019), https://www.ocj.com/2019/08/poet-cuts-production-after-rfs-waivers/.

[10] *See* Comment of Growth Energy on "Renewable Fuel Standard Program: Standards for 2020 and Biomass-Based Diesel Volume for 2021, Response to the Remand of the 2016 Standards, and Other Changes" at 1 (Aug. 30, 2019), EPA-HQ-OAR-2019-0136-0312, *available at* https://www.regulations.gov/document?D=EPA-HQ-OAR-2019-0136-0312

[11] *Id*. at 3-9; Comment of Renewable Fuels Ass'n on "Renewable Fuel Standard Program: Standards for 2020" at 14-15 (Sept. 5, 2019), *available at* https://www.regulations.gov/document?D=EPA-HQ-OAR-2019-0136-0281.

indicated its intent not to remedy adjudicated legal error on its part if doing so would mean imposing additional RFS requirements on obligated parties. In *Americans for Clean Energy*, this Court held that EPA had impermissibly used its general waiver authority to reduce the 2016 total volume requirement by 500 million gallons of renewable fuel. 864 F.3d at 696-697. Yet, in a July notice of proposed rulemaking—issued two years after *Americans for Clean Energy* vacated EPA's waiver decision—EPA proposed to do *nothing* on remand to redress that legal error due to its professed concern about the "burden" that making up the unlawfully waived 500 million gallons would impose on obligated parties. *Renewable Fuel Standard Program: Standards for 2020 and Biomass-Based Diesel Volume for 2021, Response to the Remand of the 2016 Standards, and Other Changes*, 84 Fed. Reg. 36,762, 36,788-36,789 (July 29, 2019). The Coalition has no confidence that EPA would take a different approach on remand should the Court here invalidate EPA's refusal to require that volumes covered by small refinery exemptions be made up.

## II. EPA's Arguments Related to Compelling Action Unreasonably Delayed Are Completely Irrelevant.

EPA's opposition to lifting the stay is based on its assertion that the Coalition is claiming that EPA has unreasonably delayed ruling on the Coalition's administrative petition. *See, e.g.*, EPA Opp. 10-11. That plainly mischaracterizes the Coalition's position. Denial is not delay. The Coalition has not asserted that

EPA has unreasonably delayed acting; rather, the Coalition asserts that EPA has actually denied its administrative petition, albeit without formally admitting as much.

EPA's reliance on *Norton v. S. Utah Wilderness Alliance* ("*SUWA*") to distinguish a "denial" of a request from a "failure to act" is misplaced. EPA Opp. at 7 (citing 542 U.S. 55, 63 (2004)). The Court in *SUWA* rejected the declaratory and injunctive relief sought by plaintiffs because restricting off-road vehicles on public land was not "a discrete agency action that [the agency] is required to take." 542 U.S. at 63-64.[12] Here, the Coalition does not seek to compel EPA to take an action it has discretion not to take. Rather, EPA *has* acted—it issued the 2010 rule governing small refinery exemptions and it denied the Coalition's administrative petition to modify or reconsider that rule. Those actions are judicially reviewable under *Alon*. More to the point for purposes of this Motion, EPA's denial of the administrative petition eliminates any justification for continuing the stay of judicial proceedings pending disposition of that administrative petition.[13]

---

[12] Similarly, the other cases EPA cited involve "broad discretionary powers." *Silberstein v. SEC*, 153 F. Supp. 3d 233, 239 (D.D.C. 2016).

[13] Even if the Coalition's argument could be construed as one of unreasonable delay (it is not), EPA's proffered remedy—petitioning the district court to compel agency action, EPA Opp. 6—would be completely foreclosed by this Court's precedent given § 307 of the Clean Air Act. *See Ctr. for Biological Diversity v. EPA*, 861 F.3d 174, 186, (D.C. Cir. 2017) ("[W]here a special statutory review procedure [exists], it is ordinarily supposed that Congress intended that procedure

### III. EPA Has Constructively Denied the Administrative Petition.

EPA's attempts to explain away each of the Coalition's examples evidencing a constructive denial are unconvincing. Although EPA asserts that the Coalition can point to no particular statement suggesting EPA "would not modify 40 C.F.R. § 80.1405(c) in response to the petition here," EPA need not mention the Coalition's petition at all to make clear its position. Also, whether or not documents such as interagency-review comments constitute part of a particular rule's record for judicial review, *see* EPA Opp. 11 n.7, is irrelevant. The Coalition used EPA's unequivocal statements only to show constructive denial of the administrative petition. EPA has consistently and publicly refused to account for retroactive small refinery exemptions, and it also has stated its belief that the statute precludes effective accounting for retroactive exemption extensions. *See* Pet'rs' Mot. 16-17. There is nothing tentative about EPA's statements, and EPA's presumed legal interpretation, *see id.*, makes further consideration useless.

## CONCLUSION

The Coalition respectfully requests that this Court lift the stay of proceedings and establish an appropriate schedule for further proceedings.

---

to be the exclusive means of obtaining judicial review in those cases to which it applies."); *see also Telecomm. Res. and Action Ctr. v. FCC*, 750 F.2d 70, 76, (D.C. Cir. 1984) ("[A] Circuit Court may resolve claims of unreasonable delay in order to protect its future jurisdiction.").

Date: September 12, 2019

Respectfully submitted,


/s/ Matthew W. Morrison
Matthew W. Morrison
Bryan M. Stockton
PILLSBURY WINTHROP SHAW PITTMAN LLP
1200 Seventeenth St., NW
Washington, DC 20036
(202) 663-8036
matthew.morrison@pillsburylaw.com
bryan.stockton@pillsburylaw.com


*Counsel for Petitioners Renewable Fuels Association, American Coalition for Ethanol, Biotechnology Innovation Organization, National Corn Growers Association, and National Farmers Union*


Seth P. Waxman
David M. Lehn
Claire H. Chung
WILMER CUTLER PICKERING HALE AND DORR LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
(202) 663-6000
seth.waxman@wilmerhale.com
david.lehn@wilmerhale.com
claire.chung@wilmerhale.com


*Counsel for Petitioner Growth Energy*


Bryan M. Killian
Douglas A. Hastings
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Ave., NW
Washington, D.C. 20004
(202) 373-6000
bryan.killian@morganlewis.com
douglas.hastings@morganlewis.com


*Counsel for Petitioner National Biodiesel Board*

**CERTIFICATE OF COMPLIANCE WITH FEDERAL RULES OF APPELLATE PROCEDURE 27(d) AND 32(a)**

I hereby certify that the foregoing complies with the requirements of Fed. R. App. P. 32(a)(5)-(6) because it has been prepared in 14-point Times New Roman, a proportionally spaced font. I further certify that the foregoing complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A) because it contains 2,297 words, excluding the parts exempted under Rule 32(a)(7)(B)(iii), according to the count of Microsoft Word.

Date: September 12, 2019

Respectfully submitted,

/s/ Matthew W. Morrison
Matthew W. Morrison

## CERTIFICATE OF SERVICE

I certify that on September 12, 2019, I electronically filed the foregoing Reply with the Clerk of Court for the United States Court of Appeals for the District of Columbia Circuit by using the CM/ECF system. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Date: September 12, 2019

Respectfully submitted,

/s/ Matthew W. Morrison

Matthew W. Morrison
PILLSBURY WINTHROP SHAW PITTMAN LLP
1200 Seventeenth St., NW
Washington, DC 20036
T: (202) 663-8036
F: (202) 663-8007
matthew.morrison@pillsburylaw.com

*Counsel for Petitioners Renewable Fuels Association, American Coalition for Ethanol, Biotechnology Innovation Organization, National Corn Growers Association, and National Farmers Union*